**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GENIA RENIA CHANEY,

                Plaintiff,

vs.                                      Case No.  3:15-cv-169-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Genia Renia Chaney ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for social security disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is based on the following: "[v]ision problems and left eye is completely blind[,] h[igh] b[lood] p[ressure,] and now being checked for cancer in my breast." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed March 25, 2015, at 482. On July 2, 2009, Plaintiff protectively filed an application for DIB, alleging an onset disability date of March 4, 2009. Tr. at 438-39.[2]  Plaintiff's "protective filing date" is listed elsewhere in the administrative

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed March 25, 2015; Reference Order (Doc. No. 14), entered March 26, 2015.

[2] Plaintiff also filed an application for Supplemental Security Income payments ("SSI"). Tr. at 440-48. Her SSI application was denied due to her and her spouse having "resources worth more than $3,000 for June 2009 on." Tr. at 204.   The denial of SSI benefits is not being appealed here.

transcript as June 17, 2009. Tr. at 182, 183, 478. Plaintiff's application was denied initially, see Tr. at 182, 210-11, and on reconsideration, see Tr. at 183, 216-17.

On November 2, 2010, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. Tr. at 142-81. On January 20, 2011, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claim. Tr. at 187-94. Plaintiff then requested review by the Appeals Council. Tr. at 276. On January 27, 2012, the Appeals Council granted Plaintiff's request for review and issued an Order vacating the ALJ's Decision and remanding the case to the ALJ.[3] Tr. at 200-202.

On July 13, 2012, an administrative hearing was held before the same ALJ at which a medical expert ("ME") testified.[4] Tr. at 99-139. Plaintiff objected to the testimony of the ME because Plaintiff had not been provided with pre-hearing notice of the ME's hearing appearance. Tr. at 130. The ALJ agreed to continue the hearing for "two to three weeks." Tr. at 138.

---

[3] On remand, the Appeals Council issued the following instructions to the ALJ:

Obtain additional evidence concerning [Plaintiff's] impairments in order to complete the administrative record[;] . . .[f]urther evaluate [Plaintiff's] subjective complaints and provide rationale in accordance with the disability regulations[;] . . .[g]ive further consideration to the severity of [Plaintiff's] obesity and its effects[;] . . . [f]urther, if necessary, obtain evidence from a medical expert to clarify the nature and severity of [Plaintiff's] impairments[;] . . . [g]ive further consideration to [Plaintiff's] maximum residual functional capacity during the entire period at issue and provide rationale[; and] . . . [o]btain supplemental evidence from a [VE] to clarify the effect of the assessed limitations on [Plaintiff's] occupational base.

Tr. at 201.

[4] Plaintiff did not testify at this hearing. In one part of the hearing transcript, there is a heading that states, "Examination of Claimant by Claimant's Attorney," Tr. at 116, but this appears to be an error. Aside from one remark made by Plaintiff, see Tr. at 118, the ME's testimony continues in the part beneath this heading, see Tr. at 116-118. The error is not pertinent to the issues before the Court.

On March 14, 2013, another hearing was held before a different ALJ. Tr. at 44-96. Plaintiff, who was present at the hearing with counsel, testified, as did a psychological expert and a VE. Tr. at 44-96. At the time of the hearing, Plaintiff was fifty-two (52) years old. Tr. at 65. On April 24, 2013, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claim. Tr. at 21-33. Plaintiff again requested review by the Appeals Council, Tr. at 11,[5] and she submitted evidence in the form of a letter she authored, Tr. at 5; see Tr. at 534.[6] On December 16, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 1-5, thereby making the ALJ's Decision the final decision of the Commissioner. On February 13, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises four issues on appeal: 1) "[w]hether . . .Plaintiff's marked visual limitations were substantially evaluated"; 2) "[w]hether . . .Plaintiff's postural limitations, emotional status and obesity were substantially evaluated"; 3) "[w]hether . . . the medical evidence was properly evaluated"; and 4) "[w]hether . . .Plaintiff's credibility was adequately considered." Plaintiff's Memorandum in Support of Plaintiff's Position (Doc. No. 26; "Pl.'s Mem."), filed October 4, 2015, at 1; see id. at 7-23 (some capitalization omitted).[7] On December 11, 2015, Defendant responded to the issues raised by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 28; "Def.'s Mem."). After a thorough

---

[5]  The administrative transcript contains duplicates of this letter on pages 15 and 16.

[6]  The additional evidence appears to be the same letter as the request for rehearing. See Tr. at 11, 15, 16, 534.

[7]  Plaintiff's Memorandum does not contain page numbers. Citations to Plaintiff's Memorandum refer to the page numbers assigned by the Court's Electronic Case Filing System.

review of the entire record and consideration of the parties' respective filings, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[8] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. 23-32.  At step one, the ALJ noted that Plaintiff "worked after the alleged disability onset date; however, this work was an unsuccessful work attempt as wage and earnings records show [Plaintiff] only worked through March 2009." Tr. at 23 (citation omitted).  Accordingly, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 4, 2009, the alleged onset date." Tr. at 23 (emphasis and citation omitted).  At step two, the ALJ found

---

[8] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Plaintiff suffers from "the following severe impairments: glaucoma, hypertension, degenerative disc disease, and depression." Tr. at 23 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 24 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except [Plaintiff] can only occasionally climb stairs, balance, stoop, kneel, crouch and/or crawl. [Plaintiff] can never climb ladders, ropes or scaffolds. [Plaintiff] cannot perform fine detail work. She must avoid even moderate exposure to hazards such as machinery and heights. [Plaintiff] is limited to simple, routine, tasks. She is limited to three-step commands with only occasional changes in the work settings.

Tr. at 25 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a "nurse assistant" or a "psychiatric aide." Tr. at 31 (some emphasis and citation omitted). At step five, after considering Plaintiff's age ("48 years old . . . on the alleged disability onset date," see Tr. at 31), education (at least high school, see Tr. at 31), work experience, and RFC, the ALJ found, with the assistance of the testimony of a VE, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 31 (emphasis and citations omitted), including "Laundry sorter," "Cleaner," and "Cafeteria attendant." Tr. at 32. The ALJ concluded that Plaintiff "has not been under a disability . . . from March 4, 2009, through the date of th[e D]ecision." Tr. at 32 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings

of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## **IV. Discussion**

As stated above, Plaintiff advances four arguments on appeal. Below, the undersigned addresses arguments one and three, both of which concern Plaintiff's visual limitations. In argument one, Plaintiff argues the ALJ failed to properly consider and evaluate the medical evidence regarding her visual impairments, including the opinion of Robert I. Schnipper, M.D. Pl.'s Mem. at 7-14. In argument three, Plaintiff argues the ALJ erred in her treatment of the medical opinions of Susan Yandle, M.D., Sarah Darbandi,

M.D., and Lawrence Reese, M.D.,[9] as it relates to her visual limitations, and Plaintiff further claims error in the ALJ's failure to include certain opinions of Dr. Yandle related to her visual limitations in the hypothetical question posed to the VE. Id. at 18-21.

For the reasons discussed below, the undersigned concludes that reversal and remand is necessary for further consideration of these opinions. Given this conclusion, and given that reconsideration of the evidence in light of the Court's overall findings is likely to impact the findings at which Plaintiff's remaining arguments on appeal are aimed, it is unnecessary to substantively address Plaintiff's remaining arguments. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues). A discussion follows.

### A. Plaintiff's Arguments One and Three

Plaintiff states that she can "not sustain work related activities on a regular basis due to blurry and painful vision." Pl.'s Mem. at 7. According to Plaintiff, the AC had remanded "Plaintiff's case back to an ALJ (in significant part) for the purpose of re-evaluating . . .Plaintiff's 'marked' visual limitations," id. at 8 (referring to Tr. at 200, 623), and, by Plaintiff's account, "Dr. Yandle's report of 'marked' visual limitations were the 'crux of the case,'" id. at 18. Yet, according to Plaintiff, the ALJ failed to account in her RFC finding or hypothetical to the VE for three visual impairment limitations opined by Dr. Yandle despite

---

[9] Dr. Reese testified at the second hearing conducted July 13, 2012. Tr. at 111-23. Plaintiff objected to Dr. Reese's testimony due to lack of notice. Tr. at 130. Plaintiff fails to reference any opinion of Dr. Reese's that the ALJ failed to consider that would impact the ultimate RFC assessed.

-7-

giving Dr. Yandle's opinion "great weight." Id. at 19 (citations omitted).  Further, Plaintiff argues that the ALJ failed to state what weight was being attributed to the opinion of her treating ophthalmologist, Dr. Darbandi, or to even mention at all the findings of Dr. Schnipper, who performed a ophthalmologic consultative examination at the request of the Commissioner.  Id. at 14, 20.

**B.  Medical Opinions of Dr. Yandle, Dr. Darbandi, and Dr. Schnipper**

Dr. Yandle saw Plaintiff January 8, 2010, for an internal medicine consultative examination at the request of the Division of Disability Determination.  Tr. at 620-26.  Dr. Yandle noted Plaintiff's "history of advanced glaucoma," and she stated Plaintiff "does not cook because of her eye problems, . . . does not bend because of pressure on her eyes, which gives her a headache[, and] same thing with laundry."  Tr. at 620.  Following the examination of Plaintiff, Dr. Yandle opined that Plaintiff "should avoid all activities that would cause increased pressure on her eyes, including bending to the floor and lifting from the floor, and having her head in a flexed position."  Tr. at 623.  Additionally Dr. Yandle noted that Plaintiff "has a marked limitation for peripheral vision with the right eye," and a "marked limitation for prolonged focusing, such as for reading due to her right eye tearing."  Tr. at 623.

Dr. Darbandi, a physician with Bowden Eye Associates, was Plaintiff's treating ophthalmologist.  Plaintiff continuously treated with Bowden Eye Associates beginning in 2009.  See Tr. at 593-618, 646-718.  Pertinent to Plaintiff's arguments, Dr. Darbandi responded on August 20, 2012 to questions from Plaintiff's attorney about Plaintiff's status.  Tr. at 930-32.  Dr. Darbandi stated that Plaintiff's bi-lateral cataracts "are mild [and] likely not visually significant at this time."  Tr. at 930.  Dr. Darbandi further stated she agreed with

Dr. Yandle's statement that Plaintiff "should avoid all activities that might contribute to increased pressure on her eyes, including bending, lifting from the floor or maintaining her head in a flexed position." Tr. at 931.

On March 28, 2012, Dr. Schnipper conducted a visual field analysis and prepared a visual evaluation report at the request of the Division of Disability Determinations. Tr. at 777-80. Dr. Schnipper found an abnormality in Plaintiff's peripheral field and confirmed the "retinal exam was consistent with visual field loss." Tr. at 777 (some capitalization omitted). Dr. Schnipper noted that the Plaintiff was cooperative and the evaluation did not reveal false positive or false negative errors exceeding 33% and no fixation losses that exceeded 20%. Tr. at 777.

## C. Applicable Law

The Regulations establish a "hierarchy" among medical opinions[10] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent

---

[10] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[11] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent

---

[11] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

### D. ALJ Decision / Analysis

The ALJ wrote as follows regarding Dr. Yandle's opinions:

> Susan Yandle, M.D. consultatively examined [Plaintiff] on January 8, 2010, and [Plaintiff] reported being able to see large objects but also reported excessive tearing and headaches if she focused on an object for two to three minutes. Upon examination, her best vision was 20/50 of the right and left eye but 20/40 for both on a Snellen chart at 20 feet, corrected. Her pinhole vision was 20/70 on the right and 20/50 on the left on a Snellen chart at 20 feet, and her near vision was 20/50 on the right and 20/50 on the left with both eyes at 20/30. Dr. Yandle noted [Plaintiff] could not see the right side with the left eye, could not see "either left or right" with the right eye, often closed her right eye, and had excessive tearing. Dr. Yandle diagnosed her with advanced glaucoma bilaterally, right greater than left, with shunt placement, and a history of bilateral cataracts. She also opined that [Plaintiff] had a marked limitation for peripheral vision with the right eye and would have marked limitation for prolonged focusing due to right eye tearing. She concluded [Plaintiff] should avoid all activities that would cause increased pressure on her eyes, including bending to the floor and lifting from the floor and having her head in a flexed position. The undersigned gives great weight to the assessment of Dr. Yandle. Though she notes significant findings, she does not indicate that [Plaintiff] is disabled. The undersigned has thus incorporated her findings into the residual functional capacity assessment above.

Tr. at 27 (citation omitted). The ALJ does not discuss the evaluation of Dr. Schnipper or even mention him at all in her Decision. Tr. at 21-33.

As consultative examiners, Dr. Yandle and Dr. Schnipper are properly classified as non-treating sources. See 20 C.F.R. §§ 404.1502, 416.902. As with other "medical opinions," the ALJ must state with particularity the weight given to the medical opinion of a nontreating source and the reasons for assigning that weight. Winschel, 631 F.3d at 1179 (quoting Sharfarzis v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). Here, while the ALJ attributed "great weight" to Dr. Yandle's opinions, she did not, as argued by Plaintiff, account for several of Dr. Yandle's visual limitations in either the RFC or the hypothetical to the VE. Nor did the ALJ provide good cause for discounting or rejecting those opinions she failed to include in her RFC and in the hypothetical to the VE.

"[F]or a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a

hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Winschel, 631 F.3d at 1180 (citation omitted).  In questioning the VE, the ALJ posed the following hypothetical:

> [P]lease assume a hypothetical individual of [Plaintiff's] age, education, and vocational background, capable of light work with the following additional restrictions: occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, never climb ropes, ladders, or scaffolds.  This person could perform no fine detailed type work, and would need to avoid moderate exposure to hazard such a machinery and heights; simple, routine, tasks with up to three step commands, and occasional changes in the work setting, judgment, and decision making.  Mr. McKay, will you give me three examples of jobs that would be consistent with this hypothetical?

Tr. at 90.

Plaintiff argues that the hypothetical failed to include the limitations assessed by Dr. Yandle. Pl.'s Mem. at 19.  While an ALJ is not required to include findings in a hypothetical question to the VE that the ALJ has found to be unsupported, see Crawford, 363 F.3d at 1161, here, the ALJ did not reject Dr. Yandle's opinions.  Tr. at 27.  Rather, the ALJ attributed "great weight" to Dr. Yandle's opinions, see Tr. at 27, but she failed to pose a hypothetical that included the limitations assessed by Dr. Yandle, including that Plaintiff should "avoid all activities that would cause increased pressure on her eyes, including bending to the floor and lifting from the floor and having her head in a flexed position." Tr. at 27 (referring to Tr. at 623).  Thus, the VE's opinion cannot constitute substantial evidence because the hypothetical failed to account for all of Plaintiff's impairments. Wilson, 284 F.3d at 1227.

Defendant argues that the ALJ "reduced the amount of lifting from the floor and bending to the floor Plaintiff might do by limiting her to lifting no more than 20 pounds

occasionally and to occasional stooping." Def.'s Mem. at 14. Dr. Yandle's opinion, however, called for Plaintiff to "avoid all activities that would cause increased pressure on her eyes, including bending to the floor and lifting from the floor." Tr. at 623. Moreover, Defendant's analysis cannot serve as a post hoc justification to save the ALJ's otherwise infirm decision. See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984). Thus, the matter is due to be reversed and remanded. On remand the Commissioner is directed to give consideration to all of Dr. Yandle's opinions, state the weight attributed to those opinions and reasons therefor, and reconsider the RFC in light of the limitations assessed by Dr. Yandle regarding Plaintiff's visual impairments, and incorporate in the hypothetical to the VE all of Plaintiff's credible impairments..

Regarding Dr. Schnipper, the ALJ not only failed to state the weight attributed to Dr. Schnipper's opinions, but the ALJ failed to discuss or even mention this doctor at all. Thus, it is impossible for the undersigned to determine "whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart, 662 F.2d at 735). On remand, the Commissioner is directed to give consideration to the opinions of Dr. Schnipper and to articulate the weight the Commissioner attributes to his opinions and the reasons therefor.

As for Plaintiff's treating ophthalmologist, Dr. Darbandi, the ALJ discussed the doctor's records, but the ALJ did not state the weight attributed to her opinions. In discussing Dr. Darbandi, the ALJ stated as follows:

> The updated records show that in August 2012, Sarah Darbandi, M.D. indicated that although [Plaintiff] was diagnosed with glaucoma and bilateral cataracts, her cataracts were mild and likely not significant. When seen on follow-up in January 2013, it was noted that [Plaintiff] had intractable right eye pain and referred head pain status post right globe shunt for management or glaucoma.

> Dr. Darbandi indicated that [Plaintiff's] clinical presentation was not consistent with a headache disorder. She has not responded to treatment as expected. She remained with significant eye pain, photophobia and head pain which may be related to the globe process. [Plaintiff] was also having side effects of the medication. She was started on Diamox late December/early January by Dr. Bowden.

Tr. at 27 (citations omitted).

The ALJ made reference to the "relatively weak medical evidence," Tr. at 31, and the ALJ also stated that "[t]he evidence does not indicate headaches of the frequency or severity that would preclude [Plaintiff] from working," Tr. at 28. But, throughout the latter half of 2012 and beginning of 2013, Plaintiff's complaints of headaches, photophobia, and pain in her eyes were consistent and well-documented in Dr. Darbandi's records. Tr. at 940, 946, 952, 958, 970, 976, 986, 992. Dr. Darbandi referred Plaintiff to a neurologist for her continued complaints of headaches. Tr. at 944. The neurologist noted that Plaintiff has not responded to treatment for headaches as expected and has side effects of medication. Tr. at 849-51. The ALJ referenced these records, see Tr. at 27, but then notes that "[t]here is no indication that [Plaintiff] has any medication side effects that would affect her ability to work." Tr. at 28.

Dr. Darbandi is a treating physician whose opinions are entitled to "controlling weight." See 20 C.F.R. § 404.1527(c). In light of the regulations and direction from the AC, the ALJ should have stated the weight attributed to Dr. Darbandi's opinions. In this Circuit, the ALJ must state with *particularity* the weight given to different medical opinions and the reasons therefor." Winschel, 631 F. 3d at 1179 (citations omitted) (emphasis added). The undersigned finds the ALJ's failure to do so here constitutes error. Defendant argues that any error regarding the ALJ's consideration of Dr. Darbandi's opinion is harmless "as the

-15-

weight can be inferred from the ALJ's assessment of Dr. Yandle's opinion" because Dr. Darbandi agreed with Dr. Yandle.  Def.'s Mem. at 15-16.  It is true that in August 2012 Dr. Darbandi agreed with Dr. Yandle's opinions that Plaintiff "should avoid all activities that might contribute to increased pressure on her eyes." Tr. at 931.  As discussed above, however, the ALJ either rejected or ignored these limitations assessed by Dr. Yandle, and the failure to articulate a good cause basis for rejecting these opinions was error.  The undersigned finds the ALJ's error in failing to state the weight attributed to Dr.Darbandi was not harmless, particularly given the ALJ's failure to incorporate in the hypothetical to the VE a limitation on activities that contribute to increased pressure on Plaintiff's eyes.  On remand, the Commissioner is directed to articulate the weight the Commissioner attributes to Dr. Darbandi's opinions and the reasons therefor.

## V. Conclusion

For the reasons discussed above, the matter is due to be reversed and remanded for further administrative proceedings.  Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (A) Reconsider the opinions of Dr. Yandle, Dr. Schnipper, and Dr. Darbandi, clearly state the weight assigned to them, and articulate the reasons therefor;

    (B) If appropriate, address the other issues raised by Plaintiff in this appeal;

    (C) Pose a hypothetical to the VE that incorporates all of Plaintiff's impairments; and

    (D) Take such other action as may be necessary to resolve these claims properly.

  2. The Clerk is further directed to close the file.

  3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 24, 2016.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

jde
copies:
counsel of record